IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| $38,411.00 IN UNITED STATES ) | |
| CURRENCY, ) | |
| ) | |
| Defendant. ) | |

**<u>VERIFIED COMPLAINT FOR FORFEITURE</u>**

AND NOW comes the United States of America, by and through its counsel Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and David Lew, Assistant United States Attorney for the Western District of Pennsylvania, and respectfully represents as follows:

1. This is a civil action *in rem* for forfeiture to the United States of $38,411.00 in United States currency (the "Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6).

2. Jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. §§ 1395 and 1355.

3. On June 22, 2019 at approximately 3:18 p.m., Allegheny County Police initiated a traffic stop on the Pittsburgh International Airport exit road of an illegally parked vehicle bearing a North Carolina license plate.

4. Upon approaching the vehicle, the officer observed that the driver was asleep.

5. The officer awakened the driver and identified him as Charles Triplin ("Triplin"). The officer determined that Triplin's vehicle had been rented from Raleigh, North Carolina approximately two months earlier. Based on training and experience, drug traffickers will often

1

use rental vehicles rather than their personal vehicles to transport narcotics and narcotics proceeds to avoid detection.

6. Triplin initially claimed that he had driven from New Jersey and was waiting for his cousin's flight to arrive for pickup.

7. The officer detected a marijuana odor emanating from the vehicle. When asked about the odor, Triplin admitted that he had smoked marijuana earlier and that he had marijuana in his pocket.

8. The officer then removed marijuana from Triplin's pants pocket. The officer also observed marijuana residue and drug paraphernalia in the console area.

9. Officers obtained Triplin's written consent to search the vehicle.

10. Upon searching Triplin's vehicle, officers located a black backpack containing a large amount of U.S. currency banded together. The backpack also contained a pair of shoes that had U.S. currency stuffed inside each shoe and two white envelopes, each containing a large amount of U.S. currency. Officers also found a second smaller black bag containing a large amount of U.S. currency banded together. The amount of currency found was later determined to total $38,411.00.

11. After observing narcotics and the large amount of U.S. currency, Allegheny County Police requested assistance from a Drug Enforcement Administration ("DEA") Task Force Officer, who arrived shortly after.

12. Triplin was then interviewed by the Task Force Officer. During the interview, Triplin provided numerous conflicting statements regarding his travel and the source of the Defendant Currency.

13. Triplin stated that he lived in North Carolina and had never been to Pittsburgh before. However, when officers later drove Triplin to the Allegheny County Jail, he stated that he had previously visited Pittsburgh.

14. Triplin also stated that he was at the airport to pick up his cousin "Damion" and planned to drive with him to Cameron County (3 hours from Pittsburgh) and then to Allentown (5 hours from Pittsburgh). Triplin admitted that he was uncertain of Damion's last name, and at another point in the interview referred to his cousin by two other names, "Daquan" and "Jamon."

15. Triplin did not know what airline Damion was flying on. Triplin claimed he was supposed to pick up Damion between 10:00 and 11:00 a.m. but did not know the arrival time of the flight. Officers observed that the time of the stop, 3:18 p.m., was over four hours past that timeframe. Additionally, officers confirmed that no flights had arrived from North Carolina between 10:00 and 11:00 a.m.

16. Despite initially claiming that he had come to Pittsburgh from New Jersey, Triplin later stated that he had left North Carolina on June 20 for Virginia, where he dropped off his children on June 21, and then came to Pittsburgh on June 22. Triplin stated he was going to attend a memorial service in Johnstown later that day for his sister who had recently passed away. These statements contradicted Triplin's prior claim that he was driving to Cameron County and Allentown.

17. When asked if he had tried to contact his cousin since arriving at the airport, Triplin said his phone went dead. However, officers found five phones in Triplin's vehicle, all of which had a good charge. Based on training and experience, I am aware that narcotics traffickers commonly possess and use multiple cellular phones.

18. Triplin claimed that he was picking up money from family members for his sister's memorial service and that the remainder was going to his nephews. A subsequent

search of a law enforcement database did not indicate that the individual Triplin identified as his sister was deceased. Officers were also unable to locate an obituary in either Pennsylvania or New Jersey.

19. Triplin could not identify the location in Johnstown where the memorial service for his sister was being held. Additionally, Triplin stated that he was attending an expensive catered family dinner after the memorial service, but did not know the name or location of the restaurant or the time of the dinner.

20. Triplin stated that he had no more than $30,000 in the vehicle and identified people who had allegedly given him the currency.

21. One of the people Triplin identified was his cousin "Monica." Triplin then called Monica on his phone and handed the phone to the Task For Officer to speak with her. When the officer asked Monica why Triplin was at the Pittsburgh airport, Monica said he had flown—not driven—to Pittsburgh. When the officer informed Monica that Triplin had actually driven to Pittsburgh, she altered her explanation and claimed he was at the airport to pick up his friend "Dana."

22. When Monica was asked if she had given any money to Triplin, she said she gave him $2,000 because Triplin had given her money for property and she was paying him back. Monica stated that she was not aware of a memorial service being held on behalf of Triplin's sister.

23. Triplin attempted to call Damion, the cousin he was allegedly picking up at the airport; however, the number did not go through and Triplin could not explain why he did not have an active number for his cousin.

24. Officers found a second larger bag of marijuana inside the vehicle and arrested Triplin.

25. Based on the above circumstances, agents seized the Defendant Currency pursuant to 21 U.S.C. § 881(a)(6).

26. The Defendant Currency consisted of one hundred twenty-four $100 bills, one hundred sixty $50 bills, eight hundred ninety-seven $20 bills, six $10 bills, two $5 bills, and one $1 bill.  The respective currency denominations and the manner in which the currency was bundled is indicative of how drug couriers transport illegal drug proceeds.

27. Later that day, the DEA conducted a scan of the Defendant Currency using a certified, trained narcotics detection canine, which alerted to the odor of a controlled substance on the Defendant Currency.

28. Additionally, a criminal history search of Triplin revealed a prior conviction for cocaine trafficking.

29. After the seizure, the DEA instituted administrative forfeiture proceedings against the Defendant Currency.  Triplin filed a claim to the Defendant Currency as part of the administrative forfeiture proceedings.  As a result, the United States has instituted this civil forfeiture action against the Defendant Currency.

30. Based on the foregoing, the Defendant Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6), since it constitutes moneys furnished or intended to be furnished by any person in exchange for a controlled substance and/or proceeds traceable to such an exchange and/or moneys used or intended to be used to facilitate any such violation of the Controlled Substances Act.

WHEREFORE, the United States of America respectfully requests that process of warrant *in rem* issue for the arrest of the Defendant Currency; that Judgment of Forfeiture be entered in favor of the United States for the Defendant Currency; and that the United States be granted such relief as this Honorable Court may deem just and proper, together with the costs and disbursements of this action.

    Respectfully submitted,

    SCOTT W. BRADY
    United States Attorney

    /s/ David Lew
    DAVID LEW
    Assistant U.S. Attorney
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219
    412-894-7482 (tel)
    412-644-2644 (fax)
    david.lew@usdoj.gov
    PA ID No. 320338 (AFF)

## VERIFICATION

I am a Task Force Officer of the Drug Enforcement Administration, Department of Justice, and the case agent assigned the responsibility for this case.

I have read the contents of the foregoing complaint for forfeiture and the statements contained therein are true and correct to the best of my knowledge and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 23 day of JANUARY, 2020.

_____
Steven W. Dawkins
Task Force Officer
Drug Enforcement Administration